No. A-CV-37-83

# Court of Appeals of the Navajo Nation

Navajo Housing Authority, *Petitioner / Appellant,*

vs.

Helen Betsoi, *et. al., II, Respondents / Appellees*
Decided September 13, 1985

## OPINION

*Before Tso, Acting Chief Justice, Bradley and Hilt, Associate Justices.*

This case comes before the Court upon certified questions from two District Courts. These questions arose during Forcible Entry and Detainer actions against Mutual Help Housing participants. The Court is asked to resolve two basic issues:

1. Whether Mutual Help Housing participants are tenants or equity owners;

2. If it is determined Mutual Help Housing participants are equity owners, whether Forcible Entry and Detainer may be used against them.

Mutual Help Housing is a program developed by the Department of Housing and Urban Development to assist members of Indian Tribes to become home owners. Under the program Indian Housing Authorities are authorized to borrow money to cover the costs of constructing housing in Mutual Help Housing projects. The Indian Housing Authorities are also authorized to enter into agreements with the Bureau of Indian Affairs and departments within the Department of Housing and Urban Development (HUD) for the provision of funds and services. The Indian Housing Authority (in the Navajo Nation, the Navajo Housing Authority) enters into agreements with individual participants with the goal being for the participant to become the owner of the home. The participants under the Mutual Help and Occupancy Agreement with the Navajo Housing Authority agrees to:

A. Maintain his house and grounds to the satisfaction of the Authority and pay for all utility charges.

B. Pay a monthly administration charge to the Authority for expenses and insurance.

C. Make additional payments toward home ownership based on his income and assets. These payments, called "equity payments," will shorten the period of time before he becomes the owner of his house.

The monthly payments are used to establish an operating reserve and to reduce the loan balance attributed to a particular participant's house. In addition, "annual contributions" from HUD are applied to reduce the loan balance. Initially, the participant may also be required to contribute labor and/or a lump sum payment. When the loan, which the Navajo Housing Authority incurred to construct the dwelling has been paid off, the participant is given title to the property.

It has been the practice of the Navajo Housing Authority to institute Forcible Entry and Detainer Actions (Eviction Proceedings) against Mutual Help Housing participants who become delinquent in their monthly payments. It is from such Forcible Entry and Detainer Actions in the trial courts that the issues have been raised in this Court. Specifically, the Mutual Help Housing participants assert that the use of Forcible Entry and Detainer against Mutual Help Housing participants deprives them of their property without due process of law as guaranteed under the Indian Civil Rights Act.

In determining the status of the Mutual Help Housing participants, the Court has considered the "Mutual Help and Occupancy Agreement" between the Navajo Housing Authority and the participant, the "Annual Contributions Contract" between the Navajo Housing Authority and HUD, and 44 Fed. Reg. No. 216, November 6, 1979. "Indian Housing; Final Rule." All of these documents contain a number of ambiguities, referring at various time to "participants", "homebuyers", "tenant", "rent", "equity payments", "homebuyer payments", "lessee", "lease-purchase contract", etc.

The rights and duties set out in these documents, however, are more revealing. Mutual Help Housing participants may be required to furnish land, materials or equipment, labor and/or money as a down payment; they may make structural changes or additions to the house with the consent of the Navajo Housing Authority; in the event of destruction of the house, the proceeds from the insurance carried by the Navajo Housing Authority may be used to rebuild the house or to pay off the indebtedness on the house with the remainder to the participant; and in the event of abandonment by the participant or termination of the agreement, the participant must receive the balance in the voluntary equity payments account and his Mutual Help contribution after certain expenses are deducted.[1]

1. The Court notes that the Federal Register provides for Indian Housing Authority Homeownership financing under which the Homebuyer is required to execute and deliver a Promissory Note and Mortgage. The Court, however, is unable to determine whether this procedure is utilized by the Navajo Housing Authority.

From the forgoing it is clear that the Mutual Help Housing participant has a status different from that of an ordinary tenant. The participant enters the agreement with the expectation of becoming a home owner; he usually contributes something in the nature of a "down payment"; he has use and control of the property in that he may assign his rights in the property and he may make structural changes or additions; and he has an interest in and a right to certain portions of insurance proceeds and Mutual Help contributions. The Court must conclude that a Mutual Help Housing participant has a property interest.

The Court has considered comparing that interest to those property interests commonly recognzied in other jurisdictions in the United States. The Court has decided, however, not to label the interest for two reasons. One, the trust relationship between Indian Tribes and the Federal Government creates property interests on reservations that are unique to tribes. Two, the involvement of the federal government in Mutual Help Housing creates rights and obligations that are not analogous to those involved in most property ownership situations.

The Court holds that Mutual Help Housing participants have a property interest entitled to the due process guarantees of the Indian Civil Rights Act.[2]

Next, the Court turns to the question of what is the due process to which Mutual help Housing participants are entitled.

The Court has reviewed the Rules and Regulations from 44 Fed. Reg. No. 216 which pertain to Mutual Help Housing. §805.424 provides procedures for termination of a Mutual Help Housing agreement. §805.424 (b) reads as follows:

(b) Notice of Termination of MHO Agreement by the IHA; Right of Homebuyer to Respond. Termination of the MHO Agreement by the IHA for any reason shall be by written Notice of Termination. Such notice shall state (1) the reason for termination; (2) that the Homebuyer may respond to the IHA in writing or in person of time regarding the reason for termination; (3) that in such response he may be represented or accompanied by a person of his choice, including a representative of the tribal government; (4) that the IHA will advise the tribal government concerning the termination; (5) that if, within 30 days after the date of receipt of the Notice of Termination, the Homebuyer presents to the IHA evidence or assurances satisfactory to the IHA that he will cure the breach and continue to carry out his MHO obligations, the IHA may rescind or extend the Notice of Termination; and (6) that unless there is such decision or extension the lease term and MHO Agreement shall terminate on the 30th day after the date of receipt of the Notice of Termination. The IHA may, with HUD approval, modify the provisions of the Notice of Termination relation to procedures for presentation and consideration of the

---

2. The contracts between HUD and the Indian Housing Authorities required that the Mutual Help Housing projects be subject to the Indian Civil Rights Act.

Homebuyer's response. In all cases the IHA's procedures for the termination of an MHO Agreement shall afford a fair and reasonable opportunity to have the Homebuyer's response heard and considered by the IHA. Such procedures shall comply with the Indian Civil Rights Act and shall incorporate all the steps and provisions needed to achieve compliance with state, local or tribal law with the least possible delay.

It is in the procedures set forth above that a Mutual Help Housing participant's property interest must be protected. The Navajo Housing Authority has the flexibility under these provisions to establish guidelines and procedures to comply with due process requirements. There is opportunity for the Navajo Housing Authority to provide adequate notice of termination and time for the participant to either covert the default or work out a plan with the Housing Authority for correcting the default. The procedures outlined in §805.424 set forth above appear to the Court to be minimum requirements and there is no impediment to the Housing Authority in amplifying and expanding these procedures.

Although the Court does not intend to establish such guidelines and procedures for the Navajo Housing Authority, if a due process question comes before it in regard to Mutual Help Housing, the Court will examine the procedures carefully. Notice, opportunity to be heard, adherence to guideline and procedures, and the fairness of such guidelines and procedures, and any other requirements of due process and fairness will be considered by the Court.

Due to the flexibility which the Rules and Regulations in the above cited section given to the Indian Housing Authorities, to establish procedures to insure due process in terminations, and due to the provision for refund of the Mutual Help Housing contributions, the Court does not at this time hold the Forcible Entry and Detainer actions against Mutual Help Housing participants violate due process requirements.

In each such action the trial court has the duty to scrutinize the termination proceedings which were had prior to a Forcible Entry and Detainer action being filed. Further, if any issues regarding the termination guidelines and procedures are raised in the trial court in a Forcible Entry and Detainer action, such issues may also be raised on appeal. At that time this Court will consider whether a Mutual Help Housing Participant's property interest has received the due process protections and guarantees to which it is entitled.

It is therefore Ordered that the proceedings in the trial courts, which are the subject of this case, proceed in accordance with this Opinion and Order.